554 S.E.2d 699

**Robert L. McLELLAN**

v.

**COMMONWEALTH of Virginia.**

**Record No. 2735–00–1.**

Court of Appeals of Virginia,
Chesapeake.

Nov. 20, 2001.

---

**2.** Code § 19.2–299 requires that the report on Wolfe's criminal history "shall be filed as a part of the record." *Id.*

John H. Underwood, III, Public Defender (Brenda C. Spry, Deputy Public Defender, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Randolph A. Beales, Acting Attorney General, on brief), for appellee.

Present: BRAY, FRANK and CLEMENTS, JJ.

FRANK, Judge.

Robert L. McLellan (appellant) was convicted in a bench trial of possession of heroin with the intent to distribute, in violation of Code § 18.2–248. On appeal, he claims the trial court erred in denying his motion to suppress because the police did not have reasonable suspicion to detain him. For the reasons set forth, we affirm appellant's conviction.

## BACKGROUND

On February 29, 2000, Detective McAndrew and Officer Defrietas of the Portsmouth Police Department were patrolling a housing development of the Portsmouth Redevelopment and Housing Authority (PRHA). As they pulled into the complex, McAndrew testified he observed several people "standing in the court area." As the officers exited their unmarked police vehicle, the people disbursed.

Appellant, who had been part of the group, walked over to a Grand Am and sat in the driver's seat. McAndrew approached the vehicle and asked to "see [appellant's] ID to determine if he lived on the property."

Appellant gave McAndrew his identification. The detective then ran a "standard PRHA check" to determine if appellant had been "warned" against trespassing and if any outstanding warrants existed for his arrest. As he was running the checks, McAndrew observed appellant move his right hand toward the center console of the car.

McAndrew asked appellant to place his hands on the steering wheel. Appellant initially complied but then moved his hand again toward the center console. Although the detective

again told appellant to place his hands on the steering wheel, this time appellant did not comply. McAndrew, for his safety, then ordered appellant out of the car. Appellant complied. The detective then "checked the center console" and found a loaded .38 revolver.

McAndrew admitted at trial he had no arrest warrant for appellant when he approached the vehicle and that he had determined appellant was not free to leave during the trespassing investigation. However, McAndrew said he did not recall anyone telling appellant that he was being investigated for trespassing. McAndrew did indicate "there was reason to believe that [appellant] possibly was trespassing."

Officer Defrietas testified he first saw appellant after he was seated in the car. According to the officer, as they approached appellant's vehicle, Defrietas told McAndrew that appellant was trespassing. He recognized appellant "from previous dealings and knew him to be trespassing."

During their interactions, Defrietas also saw appellant putting his hand toward the center console. According to Defrietas, appellant continued to reach for the console despite McAndrew's orders to keep his hands still. At that point, McAndrew pulled appellant out of the vehicle and discovered the gun. Appellant was arrested for possessing a concealed weapon.

Appellant was transported to the police station where he was shackled to an "o-ring" on the wall. Officer Luck saw appellant move his hands away from his body "and drop a plastic bag containing several . . . capsules containing a white substance." This substance was heroin. Appellant was arrested for possession with the intent to distribute a controlled substance. Appellant told Defrietas they had no reason to arrest him because the drugs were not his.

Appellant moved to suppress the gun and the heroin, claiming they were recovered after he was illegally seized. Appellant maintained McAndrew did not have reasonable suspicion to suspect he was trespassing and, therefore, he was seized illegally when Detective McAndrew asked for his identifica-

tion. The Commonwealth's attorney argued no seizure occurred, contending the interaction was a consensual encounter. The trial court ruled that the police had reasonable suspicion to detain appellant.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. *See Simmons v. Commonwealth*, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989) (citations omitted). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. *See Commonwealth v. Grimstead*, 12 Va.App. 1066, 1067, 407 S.E.2d 47, 48 (1991) (citation omitted). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citation omitted). However, we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. *See Shears v. Commonwealth*, 23 Va.App. 394, 398, 477 S.E.2d 309, 311 (1996) (citation omitted). "[O]n appeal, appellant carries the burden to show ... that the denial of a motion to suppress constitute[d] reversible error." *Motley v. Commonwealth*, 17 Va.App. 439, 440–41, 437 S.E.2d 232, 233 (1993).

*Lowe v. Commonwealth*, 33 Va.App. 656, 660, 536 S.E.2d 454, 456 (2000).

Appellant contends that he was detained because the detective demanded an ID and because the detective subjectively determined that appellant was not free to leave.

The general legal principles applied in this situation are well recognized. Interactions between the police and

citizens fall into one of three categories: (1) consensual encounters, (2) investigatory, or *Terry,* stops requiring reasonable suspicion, and (3) full arrests requiring probable cause. *Wechsler v. Commonwealth,* 20 Va.App. 162, 169, 455 S.E.2d 744, 747 (1995).

> A consensual encounter occurs when police officers approach persons in public places "to ask them questions," provided "a reasonable person would understand that he or she could refuse to cooperate." *United States v. Wilson,* 953 F.2d 116, 121 (4th Cir.1991) (quoting *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)); *see also Richards v. Commonwealth,* 8 Va.App. 612, 615, 383 S.E.2d 268, 270 (1989). Such encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing," and remain consensual "as long as the citizen voluntarily cooperates with the police." *Wilson,* 953 F.2d at 121.

*Payne v. Commonwealth,* 14 Va.App. 86, 88, 414 S.E.2d 869, 870 (1992). An encounter is not consensual "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). " 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' [*Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).] Since *Terry,* we have held repeatedly that mere police questioning does not constitute a seizure." *Bostick,* 501 U.S. at 434, 111 S.Ct. at 2386.

▆▆▆▆ As the Supreme Court said in *McCain v. Commonwealth:*

> A person is "seized" within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe that he was not free to leave the scene of an encounter with the police. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Cochran v. Commonwealth,* 258 Va. 604, 608,

521 S.E.2d 287, 289 (1999), *cert. denied,* 529 U.S. 1075, 120 S.Ct. 1692, 146 L.Ed.2d 498 (2000); *Parker v. Commonwealth,* 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998). Thus, a seizure occurs when a law enforcement officer, by physical force or some display of authority, restrains in some manner a citizen's freedom of movement. Only when such restraint is imposed is there a basis for invoking Fourth Amendment safeguards. *Mendenhall,* 446 U.S. at 553, 100 S.Ct. at 1876–77; *Parker,* 255 Va. at 101, 496 S.E.2d at 50; *Baldwin v. Commonwealth,* 243 Va. 191, 196, 413 S.E.2d 645, 647 (1992).

The Supreme Court has detailed examples of circumstances that may indicate that a seizure has occurred. Such examples include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877; *Parker,* 255 Va. at 101, 496 S.E.2d at 50; *Baldwin,* 243 Va. at 196, 413 S.E.2d at 648. In contrast, a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure. *Immigration & Naturalization Service v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *Baldwin,* 243 Va. at 196–97, 413 S.E.2d at 648.

261 Va. 483, 490–91, 545 S.E.2d 541, 545–46 (2001).

In *McCain,* an officer approached a stationary vehicle and asked McCain for identification. 261 Va. at 486–87, 545 S.E.2d at 543. McCain then gave the officer a valid driver's license. *Id.* at 487, 545 S.E.2d at 543. The officer ran the license for outstanding warrants and found nothing. *Id.* After returning his license, the officer asked for and received from McCain permission to search the vehicle. *Id.*

At trial, McCain argued he was detained when he complied with the officer's demand to produce identification. Rejecting this argument, the Supreme Court held:

In the present case, Officer Thomas did not observe McCain operating a motor vehicle and did not require him to produce a driver's license pursuant to Code § 46.2–104. Instead, Thomas approached McCain's vehicle, which was parked on the side of a road, and asked McCain and his companion "for some ID."

＊  ＊  ＊  ＊  ＊  ＊

Here, Officer Thomas requested identification from McCain without any show of force or display of authority that would have led a reasonable person to believe that he was not free to leave the scene of the encounter.

*Id.* at 490–91, 545 S.E.2d at 545–46. The Supreme Court concluded a seizure did not occur when the officer asked McCain for identification. *Id.* at 491, 545 S.E.2d at 546.

■■■ Here, as in *McCain,* McAndrew did not observe appellant operating a motor vehicle and did not require him to produce a driver's license pursuant to Code § 46.2–104. *Id.* at 490, 545 S.E.2d at 545. Instead, the detective, in a public place, simply requested some identification from appellant. There was no show of force or display of authority that would have led a reasonable person to believe he was not free to leave.

Appellant cites *Piggott v. Commonwealth,* 34 Va.App. 45, 537 S.E.2d 618 (2000), to support the contention that he was seized. In *Piggott,* an officer saw the vehicle in which Piggott was a passenger driving the wrong way down a one-way street. *Id.* at 47, 537 S.E.2d at 618–19. After stopping the vehicle, the officer asked Piggott to exit the car and produce identification. *Id.* at 47–48, 537 S.E.2d at 619.

This Court held that Piggott was detained when the officer retained his identification for a warrant check. *Id.* at 49, 537 S.E.2d at 620. The Court found, "[a] reasonable person in Piggott's circumstances would not have believed that he could terminate the encounter and walk away." *Id.* at 49, 537 S.E.2d at 619.

However, the Supreme Court's ruling in *McCain*, not *Piggott*, controls our decision. Although *McCain* and *Piggott* are factually similar, the Supreme Court explained, subsequent to *Piggott*:

Here, Officer Thomas requested identification from McCain without any show of force or display of authority that would have led a reasonable person to believe that he was not free to leave the scene of the encounter. After McCain provided identification to Thomas, McCain consented to a search of his car and stepped out of the automobile. He walked away from Thomas after stating that he did not want to submit to a pat-down search, and walked to the apartment building door and then to the area behind the set of steps that led to the second floor. Thus, at that point, Thomas had not restrained McCain's movement in any manner that would have constituted a seizure of his person. *A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority.*

*McCain*, 261 Va. at 491, 545 S.E.2d at 546 (citations omitted) (emphasis added). Thus, *McCain* substantially limits the holding in *Piggott*.

▮▮▮▮ Appellant's argument is not strengthened by the fact that Detective McAndrew subjectively determined appellant was not free to leave. An officer's subjective evaluation of the situation is not binding on this Court. *Dickerson v. Commonwealth*, 35 Va.App. 172, 183, 543 S.E.2d 623, 628–29 (2001). Because the relevant inquiry here is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877 only the expressed subjective intent of the officer could be relevant to determining whether the Fourth Amendment was implicated. *Id.* at 554 n. 6., 100 S.Ct. at 1877 *See also United States v. Archer*, 840 F.2d 567, 572 (8th Cir.1988) (finding "the officers' unexpressed intent to detain Archer had he attempted to drive away in the car [was] of little consequence"). As the police

never told appellant that he was not free to leave, their subjective intent is irrelevant.[1]

While the trial court implicitly found appellant was seized, the court also found the officers had reasonable suspicion and, therefore, denied the motion to suppress. We find, however, that appellant was not seized. The trial court, therefore, made the correct ruling in denying the motion to suppress, although for a different reason.

This Court has held, "[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason," so long as the correct reason and its factual basis were presented at trial. *Driscoll v. Commonwealth*, 14 Va.App. 449, 452, 417 S.E.2d 312, 313–14 (1992). Because the prosecutor at trial argued there was no detention, we find that the trial court in this case was right for the wrong reason. Finding appellant was not detained, we do not address the issue of reasonable suspicion.[2]

As appellant was not seized under the Fourth Amendment, we affirm the judgment of the trial court.

*Affirmed.*

---

1. Of course, a reasonable person can believe, based on the officer's behavior and statements, he is under arrest even though the officer does not tell him so explicitly.

2. Appellant, at trial and on appeal, does not contest the legality of the search of the console.