COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


DWAYNE SHELDON RHOADES

                                MEMORANDUM OPINION[*] BY
v.       Record No. 1359-08-4           JUDGE LARRY G. ELDER
                                     JULY 21, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
William D. Hamblen, Judge

William J. Baker for appellant.

Susan M. Harris, Assistant Attorney General (William C. Mims,
Attorney General; Rosemary V. Bourne, Assistant Attorney General,
on brief), for appellee.


Dwayne Sheldon Rhoades (appellant) appeals his bench trial conviction for grand larceny

of an automobile. He argues that the evidence should have been suppressed because the police

officer did not have reasonable suspicion to effect a traffic stop. Because the evidence

establishes appellant did not submit to the officer's show of authority until after appellant

committed a traffic violation, sufficient reasonable suspicion existed to justify the stop. Thus,

we affirm appellant's conviction.

I.

BACKGROUND

On March 16, 2006, at approximately 2:00 a.m., Officer C.M. Wurie was patrolling a

shopping center when he noticed appellant's vehicle parked in front of a Video Two store. The

shopping center had been burglarized approximately six times over the past year, so the police

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

were instructed to regularly check the area. Appellant's vehicle was situated directly in front of the store even though the area was not designated as a parking zone. None of the businesses in the shopping center were open, and appellant's car was the only other vehicle in the area. The vehicle was running, and the lights were on.

As Wurie drove past appellant's vehicle, appellant saw Wurie and waved at him. Wurie made a U-turn in order to stop appellant and question him about his presence in front of the store. Before Wurie could complete his U-turn, appellant drove off. Wurie initially lost sight of appellant but soon found him as he was pulling out of the parking lot of a nearby car dealership.

Wurie activated his lights, but appellant did not stop. Wurie next activated his sirens, but appellant continued until he ran a stop sign and "crashed" into a cul-de-sac. Appellant then jumped out of the vehicle and attempted to flee the scene. After catching appellant, Wurie ran his information and discovered that he had been driving on a suspended license. Further investigation revealed that the vehicle appellant had been driving was reported stolen.

During the suppression hearing, appellant argued that Wurie lacked reasonable suspicion to conduct an investigatory stop, but failed to articulate when precisely the stop occurred. The trial court, based on the arguments presented at the hearing, determined that there was a "reasonable articulable suspicion . . . based upon the facts and circumstances of the case," which "developed into probable cause." Appellant subsequently pled guilty to reckless driving and driving on a suspended license, and the trial court found him guilty of grand larceny in a bench trial. Appellant now appeals the grand larceny conviction to this Court.

II.

ANALYSIS

The incriminating evidence in this case stems from appellant's vehicular encounter with Officer Wurie, which appellant argues was in violation of his rights under the Fourth

Amendment. "What the *Fourth Amendment* prohibits 'is not all searches and seizures, but *unreasonable* searches and seizures.'" Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008) (quoting Terry v. Ohio, 392 U.S. 1, 9, 88 S. Ct. 1868, 1873, 20 L. Ed. 2d 889, 899 (1968)). Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances and is viewed under an objective standard. See Samson v. California, 547 U.S. 843, 848, 126 S. Ct. 2193, 2197, 165 L. Ed. 2d 250, 256 (2006); Terry, 392 U.S. at 21-22, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906.

A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal. See McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008); Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). In making such a determination, we give deference to the factual findings of the trial court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). It is appellant's burden to show that the trial court's denial of his motion to suppress was reversible error when considering the evidence in the light most favorable to the Commonwealth. McCain, 275 Va. at 552, 659 S.E.2d at 515.

On brief, the Commonwealth argues for the first time that appellant was not seized for purposes of the Fourth Amendment until after he committed a traffic infraction. Thus, the Commonwealth avers it is irrelevant whether Wurie had reasonable suspicion when he initially encountered appellant in the parking lot. As the Commonwealth correctly points out, the Fourth Amendment does not apply to police conduct unless there has been a seizure that "restrains [an individual's] freedom to walk away." Terry, 392 U.S. at 16, 88 S. Ct. at 1877, 20 L. Ed. 2d at 903. Without a seizure, there is no Fourth Amendment violation. Because "[w]e do not hesitate,

- 3 -

in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground[,]" Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), we must analyze this threshold issue before determining whether Wurie possessed reasonable suspicion.[1]

"A person is 'seized' within the meaning of the Fourth Amendment if, under the circumstances presented, a reasonable person would believe he was not free to leave the scene of an encounter with the police." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541,

---

[1] The Supreme Court of Virginia recently held that an appellate court cannot sustain a conviction on grounds not presented to the trial court. Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), petition for reh'g filed (July 6, 2009). In that case, the defendant was convicted of multiple counts for receiving stolen property. The panel of this Court affirmed her convictions on the theory of concealment, as opposed to the theory of constructive receipt— the grounds upon which the parties argued at trial. The Supreme Court held that constructive receipt was not a valid theory in Virginia, and further held that it was improper to affirm the convictions on the theory of concealment because it was not argued in the trial court or before this Court. Thus, it was improper to invoke the alternate grounds doctrine to sustain the convictions.

Whitehead does not require this Court to limit the analysis to reasonable suspicion as dictated by the parties at the suppression hearing because it did not overturn the established doctrine of sustaining a correct result on another, proper ground. Rather, this rationale prohibits arguments addressing discrete elements of a crime or separate doctrines of adjudication that require additional fact-finding. See Brown v. Commonwealth, 270 Va. 414, 421 n.2, 620 S.E.2d 760, 764 n.2 (2005) (refusing to apply the doctrine of inevitable discovery as an alternative means of overcoming the lack of probable cause); McLellan v. Commonwealth, 37 Va. App. 144, 155, 554 S.E.2d 699, 704 (2001) (noting that the doctrine permitting an appellate court to affirm on an alternate ground requires that "the correct reason and its factual basis [be] presented at trial").

On the contrary, the issue here of whether there was a seizure was subsumed by the analysis of reasonable suspicion. It cannot be said that the issue of seizure was not before the trial court because there can be no Fourth Amendment violation without a seizure. See Brown v. Texas, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640, 61 L. Ed. 2d 357, 361 (1979). The trial court therefore implicitly determined when appellant was seized for purposes of the Fourth Amendment and applied the requisite reasonableness analysis at that juncture. The evidence adduced during appellant's actual trial establishes that he was not seized until after he disobeyed a stop sign. See Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (expanding the "review of the record [to] include[] evidence adduced at both the trial and the suppression hearing"). Reevaluating when appellant was seized does not require us to recast the evidence to fit a theory that was never before the court.

546 (2001) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497, 509 (1980)).  No seizure occurs under the Fourth Amendment until the defendant fully complies with a law enforcement officer's show of authority.  See California v. Hodari D, 499 U.S. 621, 626, 111 S. Ct. 1547, 1551, 113 L. Ed. 2d 690, 697 (1991); Woodson v. Commonwealth, 245 Va. 401, 405-06, 428 S.E.2d 27, 29 (1993); Jones v. Commonwealth, 52 Va. App. 548, 557, 665 S.E.2d 261, 265 (2008).

In this case, appellant was not seized until Wurie tackled him after he abandoned the vehicle and attempted to flee on foot.  Even though Wurie intended to stop appellant in the shopping center parking lot, appellant's immediate departure rendered this attempt unsuccessful.  See Hodari D, 499 U.S. at 626 n.2, 111 S. Ct. at 1551 n.2, 113 L. Ed. 2d at 697 n.2 ("But neither usage nor common-law tradition makes an *attempted* seizure a seizure.").  Even when Wurie activated his lights and siren, appellant refused to stop the vehicle.  Only when Wurie tackled appellant and used "physical force to restrain [appellant's] movement" did a seizure take place.  Id. at 626, 111 S. Ct. at 1550, 113 L. Ed. 2d at 697.

By this point, Wurie had more than reasonable suspicion to stop appellant because, while Wurie was pursuing appellant's vehicle and appellant had not yet submitted to Wurie's show of authority, appellant committed a traffic violation by not obeying a stop sign.  Thus, we need not decide whether Wurie's prior observations alone give rise to reasonable suspicion because this infraction gave Wurie sufficient justification to stop appellant.  See McCain, 275 Va. at 553, 659 S.E.2d at 516 (holding that an officer may lawfully stop a vehicle "when he has reasonable suspicion to believe a traffic or equipment violation has occurred").  Because the evidence proving appellant had stolen the vehicle flowed from this lawful seizure, no Fourth Amendment violation occurred.

III.

CONCLUSION

Because the trial court did not err in denying appellant's motion to suppress, we affirm

his conviction for grand larceny of an automobile.

Affirmed.